**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED TRANSPORTATION UNION, *Petitioner*, | No. 11-73258 |
| v. | |
| ANTHONY FOXX,[*] U.S. Secretary of Transportation; U.S. DEPARTMENT OF TRANSPORTATION; JOSEPH C. SZABO, Administrator of the Federal Railroad Administration; FEDERAL RAILROAD ADMINISTRATION, *Respondents*. | OPINION |

On Petition for Review of an Order of the
Federal Railroad Administration

Argued and Submitted
December 3, 2013—Pasadena, California

Filed May 8, 2014

Before: Mary M. Schroeder, John T. Noonan,
and Richard R. Clifton, Circuit Judges.

Opinion by Judge Schroeder

---

[*] Anthony Foxx is substituted for his predecessor, Ray H. LaHood, as Secretary of Transportation. Fed. R. App. P. 43(c)(2).

# SUMMARY**

### Federal Railroad Administration

The panel denied a petition for review of a decision of the Federal Railroad Administration, and upheld the FRA's conclusion that it lacked jurisdiction to decide whether the Union Pacific Railroad Company had authority under a collective bargaining agreement to designate terminals for a new service the railroad had instituted in California.

The FRA concluded it lacked jurisdiction to resolve the dispute between the Railroad and the United Transportation Union because it did not have the statutory authority to interpret collective bargaining agreements.

The panel held that the FRA can review an agreement to determine what the designated terminals are, but it cannot interpret the agreement to decide how the terminals shall be designated. The panel held that the parties' dispute regarded interpretation of the collective bargaining agreement, and it was therefore governed by the resolution procedures of the Railway Labor Act and beyond the adjudicatory powers of the FRA.

---

** This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

## COUNSEL

Lawrence M. Mann (argued), Alper & Mann, PC, Bethesda, Maryland, for Petitioner.

Joy K. Park (argued), Trial Attorney, Robert S. Rivkin, General Counsel, Paul M. Geier, Assistant General Counsel for Litigation, and Peter J. Plocki, Deputy Assistant General Counsel for Litigation, United States Department of Transportation, Washington, D.C.; Michael T. Haley, Acting Chief Counsel, Thomas J. Herrmann, Assistant Chief Counsel for Safety Law, Rebecca S. Behravesh, Colleen A. Brennan, and Matthew T. Prince, Trial Attorneys, Federal Railroad Administration, Office of the Chief Counsel, Washington, D.C., for Respondents Anthony Foxx, United States Secretary of Transportation; et al.

## OPINION

SCHROEDER, Circuit Judge:

The United Transportation Union petitions for review of a decision of the Federal Railroad Administration ("FRA") that the agency lacked jurisdiction to decide whether the Union Pacific Railroad Company had authority under the Collective Bargaining Agreement to designate terminals for a new service the railroad had instituted in California. The Union had contended that terminals could be designated only through negotiations, while the Railroad had taken the position that after negotiations failed, the Agreement authorized it to designate terminals unilaterally on a trial basis.

The FRA concluded it lacked jurisdiction to resolve the dispute because it did not have statutory authority to interpret collective bargaining agreements.  The Union does not disagree with that principle of law, but contends that in this case, "interpretation" of the Agreement was not required because a cursory "review" establishes that the new terminal is not a designated terminal.

The Collective Bargaining Agreement is unquestionably relevant.  Congress has attempted to clarify that the designation of terminals is to be determined by collective bargaining agreements, 49 U.S.C. § 21101(1); H.R. Rep. No. 95-1176, at 9 (1974), and this intent has been incorporated in the FRA Agency policy, *see* 49 C.F.R. § 228, Appx. A (2012).  Given the positions of the parties in this case, the Union can prevail in the dispute only if the Railroad's interpretation of the Agreement is rejected.  We therefore agree with the FRA that the dispute is outside the purview of the FRA's authority.  The FRA can review an agreement to determine what the designated terminals are, but it cannot interpret the agreement to decide how the terminals shall be designated.  Disputes over how an agreement should be interpreted are governed by a different statute.  Because this is a dispute regarding interpretation of the Collective Bargaining Agreement, it is governed by the procedures of the Railway Labor Act ("RLA") for disputes requiring "interpretation or application of agreements covering rates of pay, rules, or working conditions."  45 U.S.C. § 151a; *see also id.* §§ 152–6.  We therefore deny the petition for review.

## BACKGROUND

This dispute over designating terminals has significance because under the railroad safety laws, known as the Hours of

Service Laws ("HSL"), if an employee is released from work for more than four hours at a designated terminal, the employee is not on duty. If an employee is released at a place other than at a designated terminal, the employee is on duty. 49 U.S.C. § 21103(b)(5)–(6). These are provisions of the HSL that the FRA administers. *See id.* at § 103(g).

The HSL are intended to ensure that employees have adequate rest to perform their work, and therefore on-duty hours are limited. *Id.* at § 21103. To accomplish this, the HSL calculates duty time with reference to when the employee begins and is released from duty. On-duty time begins when an employee reports for duty and ends when an employee is released from duty. *Id.* at § 21103(b)(1). It is common practice in the railroad industry, however, to release employees from duty at a terminal different from the one at which they begin their service day. The HSL thus includes provisions indicating whether time spent after such a release is calculated as on duty or off duty. *Id.* at § 21103(b)(5)–(6). Specifically, an employee is on duty when released for "[a]n interim period available for rest at a place other than a designated terminal . . . [and a]n interim period available for less than 4 hours rest at a designated terminal." *Id.* As a result, in order to determine whether an employee is on or off duty after release, it must first be determined whether the terminal of release was a "designated terminal."

The concept of "designated terminal" has always been critical, but the term was not originally defined. In the 1970s, a circuit split developed, with this court holding that the designation was controlled by the collective bargaining agreement. *See United States v. Atchison, Topeka & Santa Fe Ry. Co.*, 525 F.2d 1184, 1190 (9th Cir. 1975) (defining "designated terminal" as a terminal designated as the home or

away-from-home terminal "in or under collective bargaining agreements"). Under the view of the Eighth Circuit, on the other hand, the "designation" was effectively placed within the control of the employer. *See United States v. St. Louis-San Francisco Ry. Co.*, 572 F.2d 1224, 1228–29 (8th Cir. 1978) (defining "designated terminal" as a place where suitable food and lodging are available for employees).

Congress attempted to resolve the problem in 1978 by amending the statute to define "designated terminal" as "the home or away-from-home terminal for the assignment of a particular crew," 49 U.S.C. § 21101(1), with accompanying legislative history noting that "such locations shall be determined by reference to collective bargaining agreements applicable to particular crew assignments," H.R. Rep. No. 95-1176, at 9. The FRA's Statement of Agency Policy and Interpretation explains that a designated terminal is a terminal designated "in or under a collective bargaining agreement" and, further, that it must have "suitable facilities for food and lodging." 49 C.F.R. § 228, Appx. A.

This dispute originated in early 2010 when the Union Pacific Railroad Company submitted notice to the United Transportation Union that the Railroad was planning to establish a new rail service between Big Rock/Wash and Sun Valley, California. The notice to the Union quoted a relevant portion of the Collective Bargaining Agreement that provided for negotiations:

> An individual carrier may establish interdivisional service in freight or passenger service, subject to the following procedure.

Section 1 - Notice

An individual carrier seeking to establish interdivisional service shall give at least twenty days' written notice to the organization of its desire to establish service, specify the service it proposes to establish and the conditions, if any, which it proposes shall govern the establishment of such service.

. . . .

Section 3 - Procedure

Upon the serving of a notice under Section 1, the parties will discuss the details of operation and working conditions of the proposed runs during a period of 20 days following the date of the notice. If they are unable to agree, at the end of the 20-day period, with respect to runs which do not operate through a home terminal or home terminals of previously existing runs which are to be extended, such run or runs will be operated on a trial basis until completion of the procedures referred to in Section 4 [Arbitration].

The Union and the Railroad did meet, but were unable to come to an agreement as to the terminals. The Union, in May of 2011, asked the FRA Administrator to issue an order to prevent the Railroad from taking "illegal unilateral action" to create a terminal at Big Rock/Wash. The Union took the position that the designated terminal could be established

only by agreement between labor and management. The Union was concerned that the proposed terminal was located in a remote location without food or lodging.

The FRA then contacted the Railroad for its position, and the Railroad responded that the terms of the Collective Bargaining Agreement stated that, if negotiations failed, the Railroad could begin service on the new line. The FRA concluded, however, that resolution of the dispute required interpretation of the Agreement which the FRA lacked the authority to do. Its letter decision concluded that such a dispute over interpretation had to be governed by the resolution procedures authorized in the RLA, 45 U.S.C. § 151 et seq.

There is no serious disagreement that under the statutory provisions of the HSL and the provisions of the Collective Bargaining Agreement, the parties were expected to designate the terminals through collective bargaining negotiations. This is confirmed by the actual conduct of the parties in entering into negotiations. If they had agreed on terminals, the FRA would have been in a position to review the Collective Bargaining Agreement to determine whether the hours laws were being complied with.

Since the parties did not agree on any designated terminals, however, the Union has not asked the FRA simply to "review" the Collective Bargaining Agreement to see what terminals were negotiated. It has asked the Administrator, in effect, to declare that absent any agreement as to the Big Rock/Wash terminal, it cannot be treated as a designated terminal. If it is not treated as a designated terminal, then all crew time at Big Rock/Wash is on-duty time. The underlying issue is therefore what the Collective Bargaining Agreement

requires in the absence of an agreement by the parties as to the designated terminal.

The position of the Railroad is that under the terms of the Collective Bargaining Agreement the Railroad can designate a terminal on an interim basis pending arbitration. The Agreement itself is not crystal clear. The question before us, however, is not whether the Railroad's interpretation of the Agreement is the correct interpretation. The question before us is whether the FRA was correct that the underlying issue is one of interpretation of the bargaining agreement. We have little difficulty in determining that it is.

We reach this conclusion without having to consider any issue as to the degree of deference owed the FRA concerning the application of the HSL or its own jurisdiction. The underlying dispute is a contractual dispute. It is one which the provisions of the RLA are designed to resolve. 45 U.S.C. § 151a ("The purposes of the chapter are . . . to provide for the prompt and orderly settlement of all disputes growing out of . . . the interpretation or application of agreements covering rates of pay, rules, or working conditions."); *see also Elgin, J. & E.R. Ry. v. Burley*, 325 U.S. 711, 722–25 (1945) (describing the RLA's dispute resolution procedures). The Supreme Court has long recognized that those provisions are mandatory, and may not be bypassed. *Andrews v. Louisville & Nashville R.R. Co.*, 406 U.S. 320, 322–24 (1972); *Slocum v. Delaware, L. & W.R. Co.*, 339 U.S. 239, 242–44 (1950).

The Union, nevertheless, contends that our decision nearly 40 years ago in *Atchison, Topeka & Santa Fe Ry*. supports their view that the FRA can interpret collective bargaining agreements to determine how a terminal is to be designated. That case was decided before Congress enacted

Section 21101 to define "designated terminal."  Our court held that the term refers to terminals designated pursuant to a collective bargaining agreement.  Our court was interpreting the statute, however, not the terms of an agreement.  It is true that, according to its brief in that case, the government's position as to how the statute should be interpreted was formed after the government attorneys had reviewed both the legislative history and a multitude of collective bargaining agreements.  The government has never taken the position, however, that the FRA interprets collective bargaining agreements.

The record in this case reflects that the FRA has consistently taken the position that its duty is to enforce the HSL and not to interpret collective bargaining agreements to determine whether the agreements have been violated.  The position of the Union in this case is fundamentally that the Railroad violated the Collective Bargaining Agreement in unilaterally establishing a designated terminal; the position of the Railroad is that it has not violated the contract.  The FRA correctly determined that this is fundamentally an issue of contract interpretation beyond its adjudicatory powers.

Petition for review **DENIED**.